JASPER COUNTY *v.* TOWN OF HEIDELBERG.

In Banc. Dec. 31, 1948.

(38 So. (2d) 97)

O. M. Oates and **Welch, Cooper & Welch**, for appellant.

782

McFarland & McFarland, for appellee.

784

**Alexander, J.**

Chapter 134, Section 3, of the Laws of 1944, provides for distribution between the state and the respective counties of severance taxes on oil production. It is specially provided therein as follows: "When there shall be any oil producing properties within the corporate limits of any municipality, then such municipality shall participate in the division of the taxes returned to the county in which the municipality is located, in the proportion which the production of oil from any properties located within the municipal corporate limits bears to the total production in the county. In no event, however, shall the amount allocated to municipalities exceed one-third (1/3) of the tax returned to the county. Any amount received by any municipality as a result of the allocation herein provided, shall be used only for such purposes as are authorized by law."

The total taxes so collected and remitted between the period beginning April, 1944, to December, 1946, both inclusive, totals $173,654.90. One-third of such amount is $57,884.97. Taxes upon the oil produced with the Town of Heidelberg far exceed the latter amount. The county collected the former amount and paid to the Town $25,-980.57, which was one-third of the taxes from oil produced within the Town. The Town, after rejection by the County of its claim for the difference between the amount paid and $57,884.97, filed suit. Demurrer to the declaration was overruled and the County suffered a

final judgment against it for $31,904.40, whence this appeal.

Since the Town was authorized to "participate in the division of the taxes returned to the county in which the municipality is located, in the proportion which the production of oil from any properties located within the municipal corporate limits bears to the total production in the county," it is clear that under this unambigious language it was entitled to one-third of the taxes returned to the County, since the production exceeded the maximum allowance of a one-third division. The further provision that in no event shall the amount allowed to municipalities exceed one-third of the "tax returned to the county" should dispel any fancied duplicity in the statute.

While interpretative devices may be resorted to only to resolve ambiguity (Gaston v. Mitchell, 192 Miss. 452, 4 So. (2d) 892, 6 So. (2d) 318), we take notice of appellant's argument based upon subsequent legislative action whereby in 1948 the Legislature, H. B. 485, March 23, 1948, imposed a similar tax upon the production of gas, and in regulating the distribution of such taxes returned to the County, provided in Sec. 3: "In no event, however, shall the amount allocated to municipalities exceed one-third (1/3) of the tax produced *in the municipality* and returned to the County." We supply italics.

It is argued that the quoted language disclosed a legislative intent toward a consistent policy with respect to oil production and is a legislative interpretation of the Act of 1944. Support is sought by citation of 50 Am. Jur., Statutes, Sec. 337, at page 328. The citation states: "However, where intervening rights have arisen, the mandatory operation of the explanatory act is generally regarded as prospective only. Indeed, retroactive declaratory statutes will not be allowed to affect vested rights. The legislature may not, under cover of giving a construc-

tion to an existing or an expired statute, invade private rights with which it could not interfere by a new and affirmative statute. That is to say, the legislature has no power to enact a law declaring what construction or decision the court shall make upon acts under which rights and liabilities have already been acquired or incurred. In this respect, the general rule is that the construction of statutes is a judicial, and not a legislative, function, and that the legislature has no power to direct the judiciary in the interpretation of existing statutes, so as to make such legislative declarations conclusive on the courts.''

This authority further states: ''In any event a later statute not declaratory in its terms may not be relied upon for the purpose of giving a construction to an earlier act plain in its terms.''

The Act of 1948, dealing as it does with a similar tax upon gas production, is consistent with a purpose to retain a distinction in the distribution of tax revenues from oil, which purpose could readily have been disavowed upon so appropriate an occasion for its consideration.

We must therefore take the 1944 Act at its own words into which no ambiguity can be thrust without unreasonable effort.

Affirmed.